CHRISTOPHER L. SCILEPPI
LAW OFFICE OF CHRISTOPHER L. SCILEPPI, P.L.L.C.
115 W. Washington St.
Tucson, Arizona 85701
Telephone: (520) 449-8446
Facsimile: (520) 449-8447
Email: info@scileppilaw.com
State Bar No: 021591
Attorney for Defendant Julian Canastillo

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Julian Canastillo,<br><br>Defendant | Case No.: CR 22-1857-TUC-JCH-BGM-1<br><br>DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR APPEAL OF RELEASE ORDER |

COMES NOW, Defendant Julian Canastillo, by and through undersigned counsel and responds to the Government's appeal of this Court's release order.

**Law**

As the Supreme Court has recognized, "[i]n our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Excessive bail was so fundamental to this country's founding that the framers included a prohibition against it in the Constitution. U.S. Const., amend. VIII. Consistent with this principle and the presumption of innocence, the Bail Reform Act generally favors that a defendant be granted pretrial release. *See Betterman v. Montana*, 136 S.Ct. 1609, 1614 (2016) (internal citations omitted). Pretrial detainment may not be used as punishment. *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979); *Salerno*, 481 U.S. at 749. Thus,

the Bail Reform Act requires that the Court impose the least restrictive means of ensuring the appearance of the person and the safety of the community. 18 U.S.C. § 3142(c)(1)(B).

Congress writes the laws. And when it passed the Bail Reform Act, it was clear that Congress was seeking to detain fewer people prior to trial, not more. Society has only moved further towards that position in the decades since. Despite being fully aware of the sentencing guidelines and mandatory minimums it promulgates – guidelines and mandatory minimums that often lead to draconian sentences and/or recommendations – Congress crafted a law that acknowledged pretrial detention is only appropriate for a "small but identifiable group of particularly dangerous defendants." *United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999) (quoting S. Rep. No. 98-225, at 6 (1984)).

Federal law has traditionally provided that a person arrested for a non-capital offense shall be admitted to bail. *United States v. Townsend*, 897 F.2d 989, 993 (9th Cir. 1990); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985); *Stack v. Boyle*, 342 U.S. 1, 4 (1951). Only in rare cases should bail be denied. *Townsend*, 897 F.2d at 994; *Sellers v. United States*, 89 S.Ct. 36, 38, 21 L.Ed.2d 64 (Black, Circuit Justice 1968). Doubts regarding the propriety of release are to be resolved in favor of defendants. *Townsend*, 897 F.2d at 944; *Herzog v. United States*, 75 S.Ct. 349, 351, 99 L.Ed.2d 1299 (Douglas, Circuit Justice 1955).

Under the Bail Reform Act, pretrial release must be granted unless the Court first finds that accused is a serious flight risk or a danger to the community and the Court further determines that there are no conditions of release that can reasonably assure the appearance of the person as required, and also rules that his release would endanger the safety of any other person or the community. The government has the burden of proof of the risk of flight, and it must do so by a clear preponderance of the evidence. *Motamedi*, 767 F.2d at 1406-07.

In assessing whether pretrial detention or release is warranted, the judicial officer must take into account the available information concerning the following four factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including…the person's character, physical and emotional condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and record concerning appearances at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 1342(g). The weight of the evidence against the defendant is the least among the detention factors a District Court should consider because it is counterbalanced by the presumption of innocence. *Motamedi*, 767 F.2d at 1408.

**Argument**

The government's argument here is the exact same argument it presented at the detention hearing – an argument properly found unpersuasive by the Magistrate Judge. The government's position is that because the alleged offense was serious, because Mr. Canastillo has a criminal history, and because Mr. Canastillo was on probation at the time of the offense, there are no conditions that can assure his appearance at trial.

The Magistrate Judge was unmoved by the government's argument, and for the following reasons, this Court should affirm. First, as the government notes in its Addendum (ECF #182), Mr. Canastillo knew he was under federal scrutiny no later than April 2022. Yet, despite possessing this knowledge, Mr. Canastillo did not flee the jurisdiction or attempt to evade prosecution. More to the point, between April 2022 and October 26, 2022 when Mr. Canastillo was initialed by this Court, Mr. Canastillo was handling the matter for which he was

on probation in Pima County Superior Court. In that case, Mr. Canastillo had been ordered released and despite knowing that he was going to be revoked and sent back to prison, Mr. Canastillo appeared at every single meeting with his counsel and showed up at every single court appearance. He chose to stick around. He chose to face the music. There is no reason to think that his conduct would be any different in the instant case. Mr. Canastillo's life is in the United States, and specifically Tucson. Mr. Canastillo's immediate family members all live in the Tucson area. He has nowhere else to go and has no desire to go elsewhere. Nothing the government has advanced suggests that Mr. Canastillo has the motivation, let alone the means to flee.

Second, the government argues that Mr. Canastillo's actions placed the Mexican people in severe danger and severely damaged the lives of his co-conspirators, but this argument as it relates to Mr. Canastillo's release does not pass muster either. The question is not whether Mr. Canastillo's *past* actions posed a danger to the community. The question is whether his *future* conduct, if he were released, would cause a danger.

There is no reason to believe that Mr. Canastillo would swiftly return by default to illegal activity upon his release from custody. This concern is speculative at best and is based on allegations of prior illegal activity not the likelihood of future illegal or dangerous activity. Moreover, Mr. Canastillo has been incarcerated for more than 8 months now and even if he were to attempt to reengage in illegal activity, it would be unlikely that he would be trusted to resume or take on new roles as part of a conspiracy as anyone recently released from incarceration facing a lengthy potential sentence would raise suspicion related to his motives and whether he was cooperating or participating in a sting operation. There simply is no

legitimate basis to believe that if this Court were to grant release that Mr. Canastillo would pose an ongoing danger to the community.

Lastly, the government raises Mr. Canastillo's alleged commission of the offense while he was on probation as an argument that he is a flight risk. Specifically, the government writes "the defendant is a significant flight risk because of these issues while he was on probation not to mention the fact that he committed the alleged offenses while on probation." If the Court were to buy into that argument, it would render the Bail Reform Act effectively meaningless. By definition, many people before this Court have made poor judgment or questionable choices – many while on probation or pretrial release. But, those same individuals are not all necessarily flight risks by the very nature of their poor judgment or questionable choices or when they are alleged to have committed their crimes.

Mr. Canastillo would be the first to agree with Magistrate Judge Macdonald that his past failures on probation meant that the Court would be taking a chance on his release. He fully appreciates that pretrial release would be the gracious resolution. But, it would also be supported by the law.

Hundreds of defendants pass through this courthouse every week – defendants charged with serious crimes, defendants with drug and alcohol addiction, defendants facing potentially lengthy sentences. Consistent with the Bail Reform Act, this Court authorizes the release of the vast majority of those defendants. Frankly, it could be said that this Court routinely takes a chance on many of those defendants. It is then up to the individual defendant to prove that the Court was justified in taking that chance. Mr. Canastillo appreciates the fact that Judge Macdonald was willing to take a chance on him and asks that this Court affirm that decision.

Respectfully submitted this 13th of June 2023.

*/s/ Christopher L. Scileppi*
Christopher L. Scileppi
Attorney for Julian Canastillo

Certificate of Service: I certify that on this day, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Assistant United States Attorney
United States Attorney's Office
Tucson, Arizona